1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MARQUISE WALKER,                          Case No.: 1:22-cv-00332-JLT-CDB

12                    Plaintiff,               **FINDINGS AND RECOMMENDATIONS
                                               TO DISMISS THIS ACTION WITHOUT
13          v.                                 PREJUDICE FOR PLAINTIFF'S FAILURE
                                               TO PROSECUTE; ALTERNATIVELY, TO
14   HOWARD, et al.,                           GRANT IN PART AND DENY IN PART
                                               DEFENDANT'S PARTIAL MOTION TO
15                    Defendant.               DISMISS**

16                                             (Doc. 23)

17                                             **14-DAY OBJECTION DEADLINE**

18

19          Plaintiff Marquise Walker is proceeding pro se and *in forma pauperis* in this civil rights

20   action pursuant to 42 U.S.C. § 1983.

21          **I.      INTRODUCTION**

22          On July 15, 2024, Defendant Howard filed a partial motion to dismiss Plaintiff's

23   complaint. (Doc. 23.) Specifically, the motion seeks to dismiss Plaintiff's First Amendment

24   retaliation claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*Id*. at 5-10.)

25   Defendant's motion included the following notice: "Written opposition to this motion must be

26   filed not more than 21 days after the date of service of the motion, plus three days, if service is by

27   mail," quoting Local Rule 230(*l*). (*Id*. at 2.)

28

1    When Plaintiff failed to file an opposition to Defendant's motion, on August 14, 2024, the

2    Court issued its Order to Show Cause (OSC) Why Action Should Not Be Dismissed for

3    Plaintiff's Failure to Comply with the Local Rules. (Doc. 25.) Plaintiff was directed to file a

4    written response, or, alternatively, an opposition to the pending motion within 14 days. (*Id*. at 3.)

5    Plaintiff failed to respond to the OSC, and more than 14 days have elapsed.

6    **II.     DISCUSSION**

7    ***Plaintiff's Failure to Prosecute***

8    <u>Applicable Legal Standards</u>

9    The Local Rules, corresponding with Federal Rule of Civil Procedure 11, provide,

10   "[f]ailure of counsel or of a party to comply with . . . any order of the Court may be grounds for

11   the imposition by the Court of any and all sanctions . . . within the inherent power of the Court."

12   Local Rule 110. "District courts have inherent power to control their dockets" and, in exercising

13   that power, may impose sanctions, including dismissal of an action. *Thompson v. Housing Auth.,*

14   *City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action based on a

15   party's failure to prosecute an action, obey a court order, or comply with local rules. *See, e.g.,*

16   *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with a

17   court order to amend a complaint); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130-31 (9th Cir.

18   1987) (dismissal for failure to comply with a court order); *Henderson v. Duncan*, 779 F.2d 1421,

19   1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules).

20   "In determining whether to dismiss an action for lack of prosecution, the district court is

21   required to weigh several factors: (1) the public's interest in expeditious resolution of litigation;

22   (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

23   policy favoring disposition of cases on their merits; and (5) the availability of less drastic

24   sanctions." *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988) (internal quotation marks &

25   citation omitted). These factors guide a court in deciding what to do and are not conditions that

26   must be met in order for a court to take action. *In re Phenylpropanolamine (PPA) Products*

27   *Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

28

1

<u>Analysis</u>

2   Here, Plaintiff has failed to oppose Defendant Howard's motion to dismiss and has failed

3   to respond to the Court's OSC directing that he respond to Defendant's motion.

4   Plaintiff's failures to oppose the pending motion to dismiss and to respond to the OSC

5   weigh in favor of dismissal. Following the filing of Defendant Howard's partial motion to dismiss

6   on July 15, 2024, an opposition or statement of non-opposition was due within 21 days, or no

7   later than August 5, 2024, plus time for mailing. When more than 30 days passed and Plaintiff

8   had filed neither an opposition nor a statement of non-opposition, the Court issued its OSC. The

9   OSC directed Plaintiff to file a written response or an opposition within 14 days. Again, Plaintiff

10  failed to respond. Thus, the first and second factors — the expeditious resolution of litigation and

11  the Court's need to manage its docket — weigh in favor of dismissal. *Carey*, 856 F.2d at 1440.

12  The third factor, risk of prejudice to defendant, also weighs fairly in favor of dismissal

13  since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an

14  action. *See Anderson v. Air W*., 542 F.2d 522, 524 (9th Cir. 1976). Here, Defendant has appeared

15  in the action and filed a responsive pleading in the form of a partial motion to dismiss on July 15,

16  2024. Despite the passage of more than two and a half months, Plaintiff has failed to respond to

17  Defendant's motion. A presumption of injury has arisen from Plaintiff's unreasonable delay in

18  prosecuting this action. Thus, the third factor — a risk of prejudice to the defendants — also

19  weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

20  The fourth factor usually weighs against dismissal because public policy favors

21  disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However,

22  "this factor lends little support to a party whose responsibility it is to move a case toward

23  disposition on the merits but whose conduct impedes progress in that direction." *In re PPA*, 460

24  F.3d at 1228. Plaintiff is not moving this case forward toward disposition on the merits. He has

25  instead stopped communicating with the Court altogether, failing to comply with this Court's

26  orders and the Local Rules. Therefore, the fourth factor — the public policy favoring disposition

27  of cases on their merits — also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

28

1    Finally, the Court's warning to a party that failure to obey the court's orders will result in

2    dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262.

3    Here, in the First Informational Order in Prisoner/Civil Detainee Civil Rights Case issued March

4    8, 2022, Plaintiff was advised as follows: "In litigating this action, the parties must comply with

5    this Order, the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and the Local Rules of the

6    United States District Court, Eastern District of California ("Local Rules"), as modified by this

7    Order. *Failure to so comply will be grounds for imposition of sanctions which may include*

8    *dismissal of the case*. Local Rule 110; Fed. R. Civ. P. 41(b)." (*See* Doc. 3 at 1, emphasis added.)

9    Next, in the OSC issued August 14, 2024, Plaintiff was warned as follows: "**<u>Failure to comply</u>**

10   **<u>with this order will result in a recommendation that this action be dismissed for a failure to</u>**

11   **<u>prosecute and to comply with the Local Rules</u>**." (Doc. 25 at 3, emphasis in original.) Thus, the

12   undersigned finds Plaintiff had adequate warning that dismissal could result from his

13   noncompliance with a Court order and this Court's Local Rules. Thus, the fifth factor — the

14   availability of less drastic sanctions —weighs in favor of dismissal. *Ferdik*, 963 F.2d at 1262;

15   *Carey*, 856 F.2d at 1440.

16                            Summary

17    In sum, Plaintiff has failed to comply with the Court's orders and its Local Rules, and in

18   doing so, has failed to prosecute this action. The Court will recommend this action be dismissed

19   without prejudice for Plaintiff's failure to prosecute.

20    In the alternative, the Court will next address Defendant Howard's partial motion to

21   dismiss in the absence of an opposition by Plaintiff.

22                     ***The Motion to Dismiss***

23    Defendant Howard contends Plaintiff's complaint fails to plead sufficient allegations that

24   Howard retaliated against him in violation of the First Amendment. (Doc. 23 at 3.) Specifically,

25   Defendant contends filing a CDCR Form 22 is not protected conduct and that Plaintiff did not

26   sufficiently allege a causal connection between his action and Plaintiff's protected conduct. (*Id.* at

27   6-8.)  As noted above, Plaintiff did not oppose Defendant's motion.

28   //

4

<u>The Applicable Legal Standards</u>

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).

Prisoners have a First Amendment right to file prison grievances and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not

1   sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v.*

2   *Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of

3   plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in

4   time between the protected conduct and the alleged retaliation; (2) defendant's expressed

5   opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for

6   the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

7                                   Plaintiff's Factual Allegations

8          Plaintiff alleges that "on a couple of occasions prior" to May 7, 2019, he attempted to

9   speak with Defendant Howard at the conclusion of Muslim services. (Doc. 1 at 10.) On the first

10  occasion Howard was busy speaking with someone else, so Plaintiff "stood by talking to someone

11  about his beliefs of the Sunni Muslims, which seemed to distract Defendant Howard, if he could

12  be added to Jumma prayer services." (*Id*.) Plaintiff asserts Howard told him to leave immediately

13  and to make a request by sending a form. (*Id*.)

14         Plaintiff asserts that on May 7, 2019, he submitted a CDCR-22 request form to Defendant

15  Howard asking to be placed on the list for Friday Jumma prayer services and Ramadan. (Doc. 1 at

16  3, 10.) Howard denied his request. (*Id*. at 10.) Plaintiff alleges he was therefore denied the right to

17  practice his religion because he was unable to participate in the prescribed ritual of his Islamic

18  faith. (*Id*. at 3.) Plaintiff contends he was denied services during the month of Ramadan "plus

19  Jumma that Friday." (*Id*. at 10.) He states he "feels rejected, as if he is not worthy to be a

20  Muslim." (*Id*. at 10-11.) Plaintiff alleges Howard indicated a real Muslim is from the old country,

21  Plaintiff was not from the old country, and that Plaintiff would not be permitted to practice Islam

22  while Howard worked at KVSP and would not be placed on the Ramadan list or Jumma list. (*Id*.

23  at 11.)

24         Plaintiff contends Howard retaliated against Plaintiff after hearing Plaintiff express his

25  beliefs about Sunni Muslims and how he felt the Shiites were correct in a long-standing dispute.

26  (Doc. 1 at 16.) Plaintiff asserts Howard stated that his religion "comes from his country and not

27  from America." (*Id*.) Howard stated that "it was his religion and [he] could choose who he

28  wanted to practice Islam." (*Id*.) Howard further stated Plaintiff did not know anything about being

                                                    6

1  a Shiite or a Sunni Muslim, that he was not going to practice "in his Masjid," and that Plaintiff

2  was banned because he did not "care or know about old country ways." (*Id*. at 17.) Plaintiff

3  contends he "is in fact a Shiite Muslim and that Defendant Howard was acting for his own reason

4  to [deny] Plaintiff his right to practice his religion." (*Id*.)

5         Plaintiff further alleges his request to Howard was made "the day prior to Ramadan &

6  Jumma and there were due the very day of which he was to supposed to have been allowed to

7  participate." (Doc. 1 at 17.) Plaintiff was not permitted to participate in Ramadan or Friday

8  Jumma during the month of Ramadan. (*Id.*) He missed all religious observations for the month of

9  Ramadan. (*Id.*) He was unable to fast together with other Muslims and was not sent the requested

10  prayer list which would have allowed Plaintiff to "participate on his own" because he was unable

11  to "tell which times the prayers came in each day of the month." (*Id*. at 17-18.) Plaintiff contends

12  Howard was aware that Plaintiff did not have a valid schedule, stating this "validates" his rights

13  were violated. (*Id*. at 18.)

14         Following screening, the Court found Plaintiff's complaint stated plausible First

15  Amendment freedom of religion and retaliation claims. (Doc. 16.) Specifically, as concerns the

16  First Amendment retaliation claim, the Court held:

17
18
19
20
21
22
23
24
25
26

> Here, liberally construing the complaint, Plaintiff plausibly alleges a First Amendment retaliation claim. This is so because Plaintiff contends that when he approached Defendant Howard about participating in Ramadan and Jumma prayers, Howard heard Plaintiff speaking with another individual about the Sunni/Shiite conflict and expressed displeasure at Plaintiff's beliefs in that regard, advised Plaintiff to file a CDCR request form, then denied the request, leaving Plaintiff unable to participate in Ramadan festivities and rituals in accordance with his faith, and in the absence of a legitimate penological interest. *Rhodes*, 408 F.3d at 567-68; *Brodheim*, 584 F.3d 1269, 1271; *McCollum*, 647 F.3d at 882; *see also O'Brien v. Garcia*, No. 3:19-CV-01113-JAH-MDD, 2019 WL 4015647, at *8 (S.D. Cal. Aug. 26, 2019) (finding prisoner's claims of having submitted a "series" of CDCR Form 22 requests and CDCR 602 appeals sufficient to show he was engaging in protected conduct); *Cejas v. Paramo*, No. 14-CV1923-WQH(WVG), 2017 WL 1166288, at *5 (S.D. Cal. Mar. 28, 2017) ("Plaintiff's submitting the CDCR 22 grievance to Rutledge was protected activity").

27  (*Id*. at 7.)

28  //

Analysis

*Protected Conduct*

First, Defendant contends submitting a CDCR Form 22 is not protected conduct. (Doc. 23 at 6.) Defendant maintains "simply requesting to participate in an upcoming religious service" is insufficient because it "is not analogous to pursuing a grievance." (*Id*.) Defendant cites to authority concerning verbal or informal complaints by prisoners and contends "Plaintiff's Form 22 did not complain of or grieve anything. Rather, Plaintiff simply requested to participate in services." (*Id*.) The request, Defendant maintains, "is not the sort of protected conduct trigg[er]ing constitutional protection." (*Id*.)

First, the Court notes that Plaintiff's complaint, filed February 25, 2022, includes a copy of a CDCR 22 form. (*See* Doc. 1 at 7.) Nevertheless, that form is almost entirely illegible. The Court can make out a portion of Plaintiff's last name ("Wa" and "er"), the "M" in his first name, and his middle initial of "A." (*Id*.) The CDCR number, signature, housing/bed number, assignment, and topic are all illegible. (*Id*.) Where asked to "Clearly State the Service or Item Requested or Reason for Interview," the Court can discern only the first word entered: "I." (*Id*.) Nor can the Court discern a full date upon which the form was submitted. (*Id*.)

In liberally construing the complaint, the Court considered Plaintiff's various statements concerning the CDCR Form 22. In the complaint, Plaintiff states he "wrote a CDCR-22 request form to Muslim Chaplain Howard asking to be placed on the list for 'Friday Jumma Prayer Services and Ramadan …" and that he "requested to be placed on the list for religious services and Ramadan well ahead of the time limit required …." (Doc. 1 at 3.) Plaintiff further asserted he retained a copy of the CDCR Form 22 dated May 7, 2019, "on which he asked to be placed on the list for Friday Jumma prayer service and Ramadan (because his other requests were going unanswered)." (*Id*. at 10.) Later, Plaintiff noted "he requested the date prior to Ramadan & Jumma and there were due the very day of which [Plaintiff] was to supposed to have been allowed to participate." (*Id*. at 16.) Plaintiff further alleged he "requested Ramadan prayer list" and "valid [prayer] schedule" but the list and schedule were not sent. (*Id*. at 17-18.) In his conclusion, Plaintiff stated, in part: "Plaintiff shows under documentation that his request was 3

8

day prior on a 22 Request for Interview while being retained in Ad Seg that he was not late in requesting to participate in Ramadan and Jumma Prayer, and fasting, and reading of the Holy Quran." (*Id*. at 20.)

There is no question that a CDCR Form 22 submission is a protected activity. The issue here surrounds the language included in the submission—in other words, did the CDCR Form 22 make a *request* only, as Defendant argues, or did it involve a *complaint* concerning Defendant Howard such that Howard's denial in response to Plaintiff's submission could amount to retaliatory conduct related to Plaintiff's submission. The Court concludes Plaintiff's CDCR Form 22 language—as described in Plaintiff's complaint—amounts to a request rather than a complaint analogous to a grievance concerning Howard's conduct. Plaintiff repeatedly states he *asked* or *requested* he be placed on the list and to be allowed to participate in the services overseen by Howard. Plaintiff does not allege any complaint to or about Howard. Even his assertions regarding not receiving a prayer list or schedule reference a request rather than a complaint. *Compare, e.g.*, *Wakefield v. Indermill*, No. 1:09-cv-00274-LJO-SMS PC, 2009 WL 937729, at *2 (E.D. Cal. Apr. 2, 2009) (finding, in relevant part, that "Defendant's failure to respond to Plaintiff's *requests* for service [seeking personal visits "to discuss receiving holy communion and foot washing"] is not action sufficiently adverse to support" a First Amendment retaliation claim [italics added]) to *Hunter v. Haar*, No. CV 14-9886 R(JC), 2018 WL 6113098 at *6-7 (C.D. Cal. July 19, 2018) (discussing *complaints* submitted on forms other than official grievance forms and finding those submissions were protected activity because they involved "*complaints*" regarding conduct, including a request for interview form "which sought 'information' [and] was used to express 'challenge to an adverse ruling on a [a particular] *complaint*'" [italics added]).

In this case, Plaintiff's submission of a CDCR Form 22 does not amount to a protected activity because Plaintiff only requested action by Howard rather than complaining about Howard's conduct. On this basis, the Court will recommend Defendant's motion to dismiss be granted. However, Plaintiff should be granted leave to file an amended complaint to cure this deficiency, assuming he can do so in good faith. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice

1   of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be

2   cured by amendment").

3                                            *Motivation*

4          Next, Defendant contends Plaintiff's complaint does not allege that Defendant's action

5   was motivated by protected free speech activity. (Doc. 23 at 7.) More particularly, Defendant

6   asserts Plaintiff alleges in conclusory fashion that Defendant denied his CDCR Form 22 request

7   to participate in religious services because he expressed his religious opinion to another person

8   and argues Plaintiff's statements are based "only on the temporal proximity between when

9   Plaintiff spoke to this other person and when Defendant denied his Form 22 request." (*Id*.)

10  Defendant asserts that without more, the "allegation does not warrant more than a speculative

11  inference of causation." (*Id*.) Defendant maintains that Plaintiff merely speculates that Defendant

12  overheard his statements because they "'seemed to distract Defendant'" and that the allegations

13  "actually suggest Defendant's denial of Plaintiff's Form 22 was not based upon Plaintiff's

14  purported exercise of free speech, but rather because Plaintiff is not 'from the old country' and

15  therefore not a 'real Muslim.'" (*Id*.) Hence, Defendant argues Plaintiff has failed to allege

16  sufficient facts to establish his protected speech activity was a substantial or motivating factor

17  behind Defendant's denial of his request. (*Id*.)

18         Here, Plaintiff's complaint states that on May 7, 2019, he was waiting to speak with

19  Defendant Howard, who was busy speaking with another individual. (Doc. 1 at 10.) Plaintiff

20  asserts that Plaintiff "stood by talking to someone about his beliefs of the Sunni Muslims, which

21  seemed to district Defendant Howard." (*Id*.) Plaintiff then states, after repeating he had been in

22  discussion with another individual about his beliefs, "Defendant Howard told Plaintiff to leave

23  immediately and that if he had a request to send an inmate request form." (*Id*.) Plaintiff asserted

24  "Defendant Howard reacted after Plaintiff expressing his beliefs about Sunni Muslims and how

25  he felt the Shiites were correct in a long standing disputed belief in Howard's country. This

26  defendant said that his religion comes from his country & not from America and that was his

27  religion and [Howard] could choose who he wanted to practice Islam ...." (*Id*. at 16.)

28

"Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)). This Court finds it is reasonable to infer from the facts asserted that Howard's request for Plaintiff to "leave immediately" after Plaintiff engaged in a discussion with another individual about "his beliefs of the Sunni Muslim's were correct in a long dispute[]," during which Howard "seemed" distracted, and about which Howard apparently took issue, plausibly alleges the motivation element of a First Amendment retaliation claim. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers"; *Hebbe*, 627 F.3d at 342 (affording pro se prisoners the benefit of any doubt); *Neitzke*, 490 U.S. at 330 n.9 (1989) (liberal pleading standard applies to a plaintiff's factual allegations).

Plaintiff's allegations arguably involve close proximity in time between the protected conduct and the alleged retaliation and defendant's expressed opposition to Plaintiff attending religious services. *McCollum*, 647 F.3d at 882. As a result, the undersigned will recommend Defendant's motion be denied on this basis.

### III.    CONCLUSION AND RECOMMENDATIONS

Accordingly, and for the reasons given above, this Court **RECOMMENDS** as follows:

1.  That this action be **DISMISSED** without prejudice for Plaintiff's failure to prosecute; *or*, alternatively,

2.  That Defendant's motion to dismiss be **GRANTED** in part (protected conduct) and **DENIED** in part (motivation), and that Plaintiff be granted leave to file a first amended complaint within 30 days.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of

11

rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 1, 2024**                  _____

UNITED STATES MAGISTRATE JUDGE

12